**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

TYLEEK BAKER,

    Petitioner,

v.

THE ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY, et al.,

    Respondents.

Civil Action No. 20-8235 (MAS)

**OPINION**

## SHIPP, District Judge

This matter comes before the Court on a Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition. (ECF No. 7.) Petitioner did not file a timely reply. Also before the Court are Respondents' motion to seal Petitioner's juvenile criminal records (ECF No. 8), and Petitioner's motion to compel Respondents to provide an alleged transcript which Petitioner believes will substantiate his claims, (ECF No. 9.) Respondents opposed this motion. (ECF No. 10.) For the following reasons, this Court will grant the motion to seal, will deny the motion to compel, will deny the Petition, and will deny Petitioner a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey – Appellate Division summarized the factual background of Petitioner's convictions as follows:

The evidence at trial revealed that at approximately 4:00 p.m. on February 7, 2006, Jason Vega arrived at the Man, Woman and Child Barbershop in Lakewood. Vega's brother, Ramon, and Vega's friends, Christian Vivar Granados and [Jose Francisco] Olivares, known as "Hefe," were already there. Jose Silva was one of the barbers at the shop that day.

Vega wanted to buy some CDs that were in a backroom of the barbershop. He walked through another room where approximately nine people were gathered, stopping briefly to say hello. [Petitioner], who was known as "Respect," was playing chess with another person when he began "mocking" Vega. Vega ignored [Petitioner's] "mocking" until he heard [Petitioner] say to someone on the phone, "Jason Vega and his boys are plotting on me." Not knowing to whom [Petitioner] was speaking, Vega was upset and thought he was going to "have to . . . watch[ ][his] back." Vega challenged [Petitioner] to a fight "and he accepted." Vega "asked him to step outside . . . to settle it[,] basically, fistfight." James Bellamy, a defense witness who was in the shop with his wife Nakisha at the time, claimed, however, that [Petitioner] was not involved in any arguments or confrontations.

According to Vega, after [Petitioner] accepted the challenge, [he] asked someone if Hefe was in the shop. When told he was, [Petitioner] ran out the back door. Vega waited for [Petitioner] in front of the barbershop for approximately fifteen minutes and then left.

Shortly after this confrontation, Granados saw [Petitioner's co-defendants] Russell, whom he knew as "Gotti," and Scott, who was known as "High-Five," enter the barber shop and walk to the back. They stayed in the store for a couple of minutes before leaving.

Silva was arranging his barber station when he saw [Petitioner], who he knew as a regular customer, come in with two other men. When the men entered, Olivares was seated, but, as he stood up from his chair, [Petitioner] shot him six times. Silva described the gun as gray, with a black handle, and as looking like a 9 mm. Silva could not identify the two men with [Petitioner].

Granados was getting his hair cut when he saw [Petitioner,] Russell, and Scott walk into the shop. He heard [Petitioner] say, "Where's that nigger that have a beef with me?" Olivares stood up, said, "What's up?," and [Petitioner] shot him. Granados explained that during the shooting, Russell stood on [Petitioner's] left and

2

>Scott on his right. Both men had their hands crossed in front of them, kept a straight face, and did not appear upset or surprised.

*State v. Scott*, 2012 WL 1365970, at *3-4 (N.J. Super. Ct. App. Div. Apr. 20), *certif. denied*, 212 N.J. 431 (2012). Following his jury trial, Petitioner was convicted, *inter alia*, of the murder of Olivares. *Id.* at *1.

For the first time during direct appeal, Petitioner raised a claim that the trial judge denied him his right to Due Process when the judge failed to recuse himself based on the judge's previously having been involved to some extent with several juvenile prosecutions of Petitioner many years before his trial. *Id.* at *2. Petitioner also asserted that his trial counsel told him that he had spoken to the judge about the issue but had accepted the trial judge's promise to be fair. *Id.* at *19. The Appellate Division, however, declined to consider the merits of that claim on direct appeal as it implicated issues outside of the trial record and likewise implicated issues of trial counsel's effectiveness and therefore had to be raised through a petition for post-conviction relief. *Id.* In so doing, however, the Appellate Division noted that the "record [of Petitioner's trial proceedings] fails to reveal any discussion took place between defense counsel and the judge." *Id.*

Following the conclusion of his direct appeal, Petitioner filed a petition for post-conviction relief ("PCR"). *See State v. Scott*, 2019 WL 3811913 at *4 (N.J. Super. Ct. App. Div. Aug. 14, 2019), *certif. denied*, 240 N.J. 390 (2020). In affirming the denial of Petitioner's PCR petition, the Appellate Division summarized the procedural history of that petition as follows:

>[The PCR petitions of Petitioner and co-defendants] were transferred to the Monmouth vicinage where the PCR court heard all of the PCR petitions together. The PCR judge ordered the in-camera production of fourteen internal files from the prosecutor's office about [Petitioner's] charges as a juvenile. Review showed a number of documents between 1993 and 1998 where the trial judge had some level of involvement[.] Some of the documents indicated a supervisory capacity. There were also four juvenile delinquency complaints against [Petitioner] that the trial judge had signed in his former capacity as an assistant prosecutor.

3

The PCR Court allowed written interrogatories to be posed to the trial judge for his response, but the parties could not contact the trial judge directly. [Petitioner and his co-defendants] filed motions to recuse the PCR judge based on the procedures she had set up... The PCR court denied these motions.

In his answers to the interrogatories, the trial judge certified he was an assistant prosecutor from 1988 to 1999, serving as a trial attorney August 1993 and a supervisor from then until 1999. As a supervising prosecutor, he conferenced over 500 cases and tried over twenty juvenile cases per year. In his answers, he denied that Baker's counsel told him about any potential conflict when he handled the trial of [Petitioner], and he had no recollection of previously prosecuting [Petitioner.] Had he remembered, or received any evidence about prosecuting [Petitioner], he "would have transferred the case to another judge."

. . . .

The PCR court heard oral argument on all of the PCR petitions and in a comprehensive, well-reasoned opinion, denied the petitions on April 29, 2016, without the evidentiary hearing [Petitioner] requested.

[Petitioner's] PCR petition alleged that his trial counsel "rendered assistance that was constitutionally ineffective. Relevant here, he claimed his attorney was ineffective by allowing the trial judge to preside over a case where the judge previously had prosecuted him when he was a member of the prosecutor's office.

The PCR court rejected [Petitioner's] claim that he was entitled to relief based on his allegation the trial judge prosecuted him as a juvenile offender. [Petitioner] could have raised this conflict issue at any point prior to, during or after trial. He did not raise it until 2010, two years after the trial. More importantly, [Petitioner] did not allege any actual bias by the trial judge. Because [Petitioner] was not alleging the judge acted with bias or partiality, [Petitioner] could not show that the result of the proceeding would be different if the trial court were disqualified retroactively. The PCR court found no corroborating evidence that Baker's trial counsel informed the trial court about the conflict prior to trial. The trial court denied any such notice.

*Id.*

On appeal from the denial of PCR relief, the Appellate Division rejected both Petitioner's ineffective assistance of counsel claim and his contention that the wrong standard had been applied and that the judge should have been retroactively disqualified on the basis of the potential for bias. *Id.* at *7-8. The Appellate Division explained that decision as follows:

> Eleven years passed between [Petitioner's] juvenile cases and his trial in 2008. The judge was not aware of any prior involvement with Baker. The issue was not raised during the trial when the State or judge could have addressed it. There was no bias by the judge and all of [Petitioner's] appeal issues about the conviction and sentence were addressed and affirmed. [Petitioner] had many opportunities to raise this issue. The State would likely be prejudiced if records no longer exist or witnesses are not available if we were to reverse.
>
> [Petitioner] provided no corroboration for his claim that he advised his attorney about this issue prior to trial. He concedes there was no proof of actual bias by the judge. He has not argued or shown that the result of the trial would have been different had the alleged conflict been disclosed.
>
> We are satisfied based on the totality of the facts that denial of [Petitioner's] PCR will not erode the public's confidence in the integrity of the judiciary and that Baker's fair trial rights were not violated. He did not show he was prejudiced or that the result of the proceeding would have been different. Without a prima facie case of ineffective assistance of counsel, an evidentiary hearing was not warranted.

*Id.* at *8.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and

5

Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

In his habeas petition, Petitioner presents a single claim – that he was denied Due Process because the trial judge who oversaw his criminal prosecution had previously been involved in some capacity in some of his juvenile delinquency matters more than a decade before his criminal

6

trial in this matter.[1] Although it is "axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process[,] ... most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (internal citations and quotations omitted). The Due Process Clause will only require the disqualification of a trial judge under certain limited sets of circumstances including where the judge has "a direct, personal, substantial, pecuniary interest in a case," and where a judge has a conflict arising out of "his participation in an earlier proceeding" and that prior involvement, such as where the judge charges a defendant with criminal contempt, ensures that the judge "cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of the accused." *Id.* at 876-81. Where a claim of this second type is raised, the inquiry involved is objective – the question is not whether the judge "is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Id.* at 881. A Due Process violation will only be found where the judge "would have been required to recuse herself." *McKernan v. Superintendent Smithfield SCI*, 849 F.3d 557, 565 n. 44 (3d Cir. 2017).

In this matter, the evidence in the record indicates that the trial judge had no recollection of any involvement in Petitioner's juvenile cases, more than a decade had passed between the judge's final involvement in any of Petitioner's delinquency matters by the time trial had begun, and there is no evidence which corroborates Petitioner's assertion that the alleged conflict was brought to his attention – the record instead indicates that it was only raised on appeal. Given

---

[1] Petitioner does not premise his claim on ineffective assistance of counsel, as he largely did during his post-conviction relief proceedings, but instead seeks relief premised solely on an alleged Due Process claim arising out of the trial judge's alleged conflict. It is not clear whether this version of Petitioner's claim was actually fairly presented to the Appellate Division given the way in which he initially raised his claim, but the Appellate Division did explicitly consider and reject there having been a Due Process violation arising out of the alleged conflict issue. To the extent that Petitioner's claim was not properly exhausted, however, this Court will deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

7

these facts, there is no clear potential for bias and the average judge placed in such circumstances would be more than capable of acting in a neutral capacity. Indeed, the trial record and Petitioner's own concession that there was no bias on display throughout trial proceedings supports such a conclusion. Petitioner's claim that the trial judge was unconstitutionally biased and that the failure to disqualify him violates Due Process protections is without merit. The Appellate Division's decision to reject that claim was neither contrary to, nor an improper application of federal law, and Petitioner's sole claim therefore serves as no basis for habeas relief.

The Court further notes that even claims of a constitutional dimension will not serve as a basis for habeas relief unless the violations "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 115-16 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Here, given the lack of any apparent bias, Petitioner has utterly failed to show that the failure to disqualify the trial judge had a substantial and injurious outcome on the result of his trial – indeed, the evidence against him including direct eyewitness testimony was quite strong. Any alleged error was thus clearly harmless and insufficient to warrant habeas relief in any event. *Id.*

Although the Court denies Petitioner's sole claim on the merits, the Court notes that there are also two motions pending. First, Respondents request that this Court seal Petitioner's state court juvenile records as such records are not generally available to the public, are sealed in state court, and implicate Petitioner's privacy interests. (ECF No. 8.) As Petitioner did not oppose that motion, and as this Court recognizes the privacy interests in maintaining the secrecy of Petitioner's sealed juvenile records, that motion is granted.

Second, in March 2021, long after the time for filing a timely reply had expired, Petitioner filed a motion requesting that this Court "compel" Respondents to provide an "unedited" transcript for a hearing which allegedly took place before the trial judge on August 25, 2008, which Petitioner

8

asserts will prove his trial counsel raised the conflict issue to the trial judge's attention. (ECF No. 9.) In that motion, however, Petitioner provides a copy of an August 25, 2008, transcript relating to an appearance of his co-defendant, previously provided by Respondents, which does not clearly mention any formal appearance by Petitioner or his counsel, and does not appear to have been edited in any way. (*See* ECF No. 9 at 12-21). Petitioner likewise asserts in his motion that an employee of the Ocean County Superior Court's transcript unit directly told him that "no such transcript can be found." (*Id.* at 8.) Petitioner thus presents nothing but his own bald assertion that the transcript was in some way doctored to remove the alleged critical exchange, and the assertions and evidence he does provide undercut that bald assertion.

Respondents filed opposition to Petitioner's motion. (ECF No. 10.) In that opposition, Respondents argue that no such transcript exists, that the record before this Court contains all of the transcripts obtained by Petitioner's PCR counsel and supplied to the trial court. Respondents further argue that the State possesses no other August 25, 2008, transcript, and that Petitioner's PCR counsel failed to obtain any evidence substantiating Petitioner's bald assertion of a doctored transcript during the PCR proceedings. All of the foregoing ultimately results in the rejection of Petitioner's claims. (*Id.*) As there is no evidence that the transcript in question actually exists, and Petitioner has presented nothing but a bald assertion that the transcript the Court does have is in any way doctored or altered, his motion seeking to have the Court compel the production of an alleged transcript not in the possession of Respondents or the state court (ECF No. 9) is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's sole habeas claim is without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V. CONCLUSION

In conclusion, Respondents' motion to seal (ECF No. 8) is **GRANTED**, Petitioner's motion to compel (ECF No. 9) is **DENIED**, Petitioner's Petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE